UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON CLEVLAND, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>LUDWIG INSTITUTE FOR CANCER RESEARCH LTD.,<br><br>　　　　　　　Defendant. | Case No.: 21cv871 JM (JLB)<br><br>**ORDER ON MOTION TO DISMISS** |

Presently before the court is the Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by Defendant Ludwig Institute for Cancer Research Ltd. (Doc. No. 14). Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for resolution without oral argument. Having considered the Parties' arguments, the evidence, and the law, the court rules as follows.

///
///
///
///
///

1

21cv871 JM (JLB)

# BACKGROUND

## I. Factual Background[1]

The instant case arises from Defendant's employment of Plaintiffs Don Cleveland, Arshad Desai, Richard Kolodner, Paul Mischel, Karen Oegema, and Bing Ren at Defendant's research branch ("San Diego Branch") at the University of California, San Diego ("UCSD") and Defendant's subsequent decision to close this branch.

### A. Defendant's Affiliation Agreement with UCSD

In 1991, Defendant entered into an Affiliation Agreement with UCSD to establish a research branch. (Doc. No. 1 ("Compl.") at ¶ 17). The Affiliation Agreement required Defendant to appoint a Branch Director and select employees for the "continuous, active conduct of medical research." *Id.* at ¶¶ 17, 19-20.

### B. Plaintiffs' Employment

According to the Complaint, Plaintiffs are "leading scientists who have committed their research programs to pursuing breakthroughs in cancer prevention and control." *Id.* at ¶ 1. Between 1996 and 2016, Plaintiffs each accepted written offers from Defendant to establish laboratories at Defendant's San Diego Branch ("Laboratory Support Agreements"). *Id.* at ¶¶ 7-13, 22. The Laboratory Support Agreements promised Plaintiffs an annual budget that would include Plaintiffs' salaries, benefits, and funding for Plaintiffs' research. *Id.* at ¶ 22. Defendant also agreed to pay Plaintiffs at UCSD's salary scale. *Id.* at ¶ 23. In addition, Plaintiffs separately entered into employment contracts with Defendant, under which Plaintiffs were appointed as Defendant's "Members" for a rolling term of five years. *Id.* at ¶ 25.

///

///

---

[1] The Factual Background is derived from Plaintiffs' Complaint. In a Motion to Dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

### C. Decision to Close San Diego Branch

In a board meeting held on April 2018, Defendant made the decision to close the San Diego Branch by December 31, 2023. *Id.* at ¶¶ 3, 29. On or about May 21, 2018, Defendant sent letters to Plaintiffs informing them their rolling five-year employment terms were being converted into four or five year fixed terms, such that each Plaintiff would be terminated prior to the San Diego Branch's closure date. *Id.* at ¶ 31. Defendant also unilaterally imposed a multi-year budget that was allegedly insufficient to provide adequate funding for Plaintiffs' research. *Id.* at ¶ 32.

On February 12, 2019, at Defendant's request, Plaintiffs (except Plaintiff Mischel) attended a meeting with Defendant's President and CEO, Edward McDermott, and Defendant's Scientific Director, Dr. Chi Van Dang. *Id.* at ¶¶ 5, 33. At the meeting, Defendant presented Plaintiffs with the same reduced budget and made receiving this reduced funding contingent upon Plaintiffs executing a Transition Agreement and Release ("Transition Agreement"). *Id.* at ¶ 34.

The Transition Agreement required Plaintiffs to diligently pursue their scientific research as Defendant's employees despite the cut in research funding. *Id.* at ¶ 35. The Transition Agreement also included a unilateral release and non-disparagement clause and obligated Plaintiffs to ensure Defendant continued to receive UCSD's cooperation. *Id.* At the meeting, McDermott allegedly threatened "consequences" if Plaintiffs did not sign the Transition Agreement. *Id.* at ¶ 5. None of the Plaintiffs agreed to the Transition Agreement's terms. *Id.* at ¶ 37.

After they declined, Plaintiffs allege Defendant followed through on its threats and retaliated by further cutting Plaintiffs' research budgets for 2020 and 2021. *Id.* at ¶ 39. Beginning July 1, 2019, Defendant also refused to pay cost of living and merit increases to match the UCSD salary scale. *Id.* at ¶ 40.

On October 31, 2019, Plaintiff Kolodner wrote a letter to McDermott, Notter, and John Gordon, the Chair of Defendant's Audit Committee, providing an analysis of why

the 2020-2021 budget was allegedly insufficient to meet Defendant's legal obligations. *Id.* at ¶ 41. Kolodner was demoted four days later. *Id.*

On November 4, 2019 and November 15, 2019, Plaintiffs were told Defendant would not fund any research starting in 2020. *Id.* at ¶ 42. Defendant further directed Plaintiffs to invalidate employment contracts for certain lab personnel. *Id.* at ¶ 42. On May 5, 2021, Plaintiffs filed complaints with the Department of Fair Employment and Housing and received right to sue letters. *Id.* at ¶ 43. These letters were served on Defendant via certified mail on the same day they were received. *Id.*

## II.  Procedural Background

On May 5, 2021, Plaintiffs filed suit against Defendant. *See* Compl. Plaintiffs' Complaint asserts six causes of action arising primarily under labor and employment laws. *Id.* Specifically, Plaintiffs assert that: Defendant retaliated against Plaintiff Kolodner after Kolodner disclosed his belief Defendant's 2020 and 2021 budget was allegedly insufficient to meet Defendant's various legal obligations (Count I); Defendant retaliated against all Plaintiffs after each declined to sign the Transition Agreement (Count II); age discrimination (Count III); wrongful adverse employment action in violation of public policy (Count IV); failure to timely pay wages (Count V); and unfair competition (Count VI). *Id.* at ¶¶ 44-94.

On July 6, 2021, Defendant filed the instant Motion to Dismiss. (Doc. No. 14). Plaintiffs filed a Response (Doc. No. 15) and Defendant subsequently filed a Reply (Doc. No. 16). The Motion is now fully briefed and ripe for resolution.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted[.]" A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted).  Nor is the court "required to accept as true allegations that contradict exhibits attached to the [c]omplaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  This plausibility review is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. (quotation marks omitted).

Where a complaint does not survive 12(b)(6) analysis, the court will grant leave to amend unless it determines that no modified contentions "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

///
///
///

# ANALYSIS

## I. Defendant's Request for Judicial Notice

The court must first decide what materials it will consider in making its determination on Defendant's Motion to Dismiss. In this case, Defendant requests that the court take judicial notice of: (1) a February 12, 2019 Transition Agreement; and (2) an October 31, 2019 letter from Plaintiff Kolodner to Defendant. (Doc. No. 14-2 at 2). In support, Defendant contends these documents are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" under Federal Rule of Evidence 201 and are relied on extensively throughout Plaintiffs' Complaint as the bases for their claims. *Id.* Plaintiffs do not oppose Defendant's request, but argue the documents cannot be used to create a factual dispute. (Doc. No. 15 at 14). Plaintiffs nevertheless contend these documents support their theory of the case. *Id.* at 15.

Here, Defendant appears to be offering the documents in question as a basis to challenge the factual averments in Plaintiffs' Complaint. For example, Defendant contends the October 31, 2019 letter makes clear Plaintiff Kolodner believed he was reporting potential breaches of contractual (versus statutory) obligations. (Doc. No. 14 at 13). Judicial notice is not an appropriate vehicle "to resolve competing theories against the complaint" or other factual disputes at the pleading stage. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

At this stage, the court declines to be drawn into a dispute as to which side's competing interpretation of these documents is the correct one. As the Ninth Circuit has cautioned, doing so "risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Id.* For these reasons, the court **DENIES** Defendant's request.

## II. Motion to Dismiss

Defendant moves to dismiss all of Plaintiffs' claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 14). The court addresses each of Plaintiffs' causes of action in turn.

### A. Retaliation in Violation of California Labor Code § 1102.5 (First Cause of Action)

California Labor Code  § 1102.5(b) is a whistle-blower statute that protects employees from retaliation when they have "reasonable cause to believe" that their employer is in "violation of state or federal statute" or "local, state, or federal rule or regulation" and the employee reports such information "to a person with authority over [them] or another employee who has the authority to investigate, discover, or correct the violation or noncompliance[.]" Cal Lab Code § 1102.5(b).

To state a *prima facie* case for retaliation in violation of California Labor Code § 1102.5, a plaintiff must show that: "(1) [he or she] engaged in a protected activity, (2) [his or her] employer subjected [him or her] to an adverse employment action, and (3) there is a causal link between the two." *Patten v. Grant Joint Union High Sch. Dist*, 134 Cal. App. 4th 1378, 1384 (2005).  "Although there is some split of authority, the majority of courts require plaintiffs bringing section 1102.5(b) claims to allege the specific rule, regulation or statute they reasonably believed had been violated, and the factual basis for their reasonable belief." *La v. San Mateo Cty. Transit Dist.*, No. 14-CV-01768-WHO, 2014 WL 4632224, at *5 (N.D. Cal. Sept. 16, 2014) (collecting cases); *see Chan v. Canadian Standards Ass'n,* No. SACV192162JVSJDE, 2020 WL 2496174, at *2 (C.D. Cal. Mar. 16, 2020) ("A plaintiff must be able to identify a specific state or federal statute, rule, or regulation which he  believed was being violated.").

In their Complaint, Plaintiffs allege Kolodner was demoted from his position as a Branch Director as a consequence of his "disclos[ing]" to two of Defendant's board members and Defendant's President and CEO that Defendant's 2020-2021 budget "was insufficient to meet [Defendant's] legal obligations[.]"  Compl. at ¶¶ 46-47.  Plaintiffs connect the misconduct Kolodner allegedly disclosed to: (1) a failure to timely pay wages under California Labor Code 204(a); and (2) Defendant's cost-sharing obligations under 2 CFR Part 200. *Id.*  ¶ 46.

In its Motion to Dismiss, Defendant contends Plaintiffs' claim hinges on Kolodner's "mistaken interpretation of the rights afforded under Section 204." (Doc. No. 14 at 20). At this stage of the proceedings, however, Defendant's argument misses the mark. Even assuming Kolodner was mistaken, Plaintiffs may still come forward with evidence from which a trier of fact could find Kolodner had "reasonable cause to believe" Defendant's actions violated California Labor Code § 204(a). This is all that California Labor Code § 1102.5 requires. *See Lukov v. Schindler Elevator Corp.*, 594 F. App'x 357, 358 (9th Cir. 2015) ("California Labor Code § 1102.5 protects whistle blowers if they act with reasonable cause to believe that a rule or regulation was violated, *even if they turn out to be wrong*.") (emphasis added). Whether Kolodner's belief was, in fact, reasonable "cannot be answered at the pleading stage." *Chan v. Canadian Standards Ass'n*, No. SACV192162JVSJDEX, 2020 WL 4334915, at *3 (C.D. Cal. June 8, 2020).

Nevertheless, Plaintiffs' alternative allegation that Kolodner "reasonably believed" Defendant violated some provision of 2 CFR Part 200 is insufficient to state a claim. The point of notice pleading is to "give the defendant fair notice of what the [] claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Plaintiffs' citation to a "whole statutory framework does not serve this purpose[.]" *La v. San Mateo Cty. Transit Dist.*, No. 14-CV-01768-WHO, 2014 WL 4632224, at *6 (N.D. Cal. Sept. 16, 2014). To the extent that Plaintiffs *now* seek to identify a more specific provision within 2 CFR Part 200, it is improper for Plaintiffs to do so in their opposition papers. *See Matthews v. Cty. of Santa Cruz*, No. 20-CV-01619-EJD, 2021 WL 949419, at *6 (N.D. Cal. Mar. 12, 2021) ("[A] brief opposing a motion to dismiss cannot amend a complaint.").

For these reasons, the court **GRANTS** Defendant's Motion to Dismiss on Plaintiffs' First Cause of Action, to the extent Plaintiffs' claim is based on Kolodner's reasonable belief that some provision of 2 CFR Part 200 was violated. Defendant's Motion as to Plaintiffs' First Cause of Action **DENIED** in all other respects.

///

///

**B.     Retaliation in Violation of California Government Code § 12940(h) (Second Cause of Action)**

"The FEHA prohibits retaliation against 'any person.'" *Casey v. Sumitomo (SHI) Cryogenics of Am., Inc.*, No. 19-CV-937-CAB-BGS, 2019 WL 3817952, at *3 (S.D. Cal. Aug. 14, 2019) (quoting Cal. Gov't Code § 12940(h)).  To establish a *prima facie* case of retaliation under California's Fair Employment and Housing Act ("FEHA"), a plaintiff must show that: "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action."  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (citations omitted).

In their Complaint, Plaintiffs allege Defendant "demanded" Plaintiffs sign a Transition Agreement that included: (1) a waiver of rights under the FEHA; and (2) a non-disclosure agreement as a condition of Plaintiffs' continued employment.  Compl. at ¶ 52.  Plaintiffs further allege that after they declined to sign the Transition Agreement, Defendant retaliated by cutting their research budgets and refusing to pay cost of living and merit salary increases. *Id.* at ¶¶ 54-55.

The Parties dispute whether Plaintiffs' refusal to sign the Transition Agreement constituted a "protected activity" for which Plaintiffs could not be retaliated against under the FEHA.  (Doc. Nos. 14 at 23-24; 15 at 21-22).  "The statutory language of section 12940(h) indicates that protected conduct can take many forms." *Yanowitz*, 36 Cal. 4th at 1042.  Specifically, section 12940(h) makes it an unlawful employment practice "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [the FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [the FEHA]."  Cal. Gov't Code § 12940(h); *see Page v. Superior Court*, 31 Cal. App. 4th 1206, 1210 (1995).

Plaintiffs contend the Transition Agreement's FEHA waiver and non-disparagement provisions violate the FEHA under Government Code § 12964.5.  (Compl. at ¶ 51; Doc. No. 15 at 22.  As these provisions are allegedly "illegal under [the] FEHA,"

9

21cv871 JM (JLB)

Plaintiffs argue their refusal to sign the Transition Agreement, therefore, constitutes a "protected activity" under § 12940(h). (Compl. at ¶¶ 51, 56; Doc. No. 15 at 22).

California Government Code § 12964.5 makes it an unlawful employment practice for an employer, as a condition of continued employment, to "require an employee to sign a release of a claim or right [under the FEHA]" or a "nondisparagement agreement or other document to the extent it has the purpose or effect of denying the employee the right to disclose information about unlawful acts in the workplace." Cal Gov Code §§ 12964.5(a)(1)(A)(i) and 12964.5(a)(1)(B)(i).

Under the plain terms of the statute, and taking Plaintiffs' factual allegations as true, Plaintiffs have sufficiently stated a retaliation claim. Specifically, Plaintiffs' refusal to sign an agreement that allegedly contains waiver and non-disparagement provisions that are illegal under the FEHA may properly serve as the predicate "protected activity" for Plaintiffs' FEHA retaliation claim.

Defendant's arguments to the contrary are not persuasive. Defendant first contends the offer of a severance in exchange for a release of claims is not a "forbidden practice" under the FEHA. (Doc. No. 14 at 24). The only legal authority Defendant cites to support this proposition, however, are distinguishable, out-of-circuit cases that have minimal—if any—persuasive value. *Id.* Regardless, Plaintiffs are not alleging Defendant declined to pay them a severance payment. Instead, Plaintiffs allege Defendant conditioned Plaintiffs' continued employment on the signing of the Transition Agreement. Compl. at ¶ 52. Whether or not this is *actually true*, at this stage, the court must assume the truth of all factual allegations, and construe them in the light most favorable to the nonmoving party. *Thompson*, 295 F.3d at 895.

Defendant separately contends California Government Code § 12964.5 does not apply because the Transition Agreement is a "negotiated settlement agreement." (Doc. No. 14 at 26). Government Code § 12964.5(d)(1) states the provisions of § 12964.5 do not apply to a negotiated settlement agreement "to resolve an underlying claim under this part that has been filed by an employee in court, before an administrative agency, in an

alternative dispute resolution form, or through an employer's internal complaint process." However, Defendant's contention that the Transition Agreement followed Plaintiffs' "internal complaints" is not sufficient for the court to conclude as a matter of law, that the Transition Agreement served to resolve some underlying claim filed by Plaintiffs through Defendant's "internal complaint process."[2] Instead, this question is better resolved after the Parties have had an opportunity to conduct discovery and present evidence.

Finally, Defendants contend Government Code 12964.5 has no relevance here because Plaintiffs did not *sign* the Transition Agreement. This argument is not supported by any on-point legal authority. Nor is it supported by the plain terms of the statute which states only that an employer is prohibited from "requir[ing] an employee to sign a release" or "nondisparagement agreement or other document" under certain conditions. Cal Gov Code § 12964.5(a)(1)(A) and (a)(1)(B). The statute does not explicitly require the employee to actually sign the release. Had the California state legislature intended the narrower construction advanced by Defendant, it could have so expressly provided. The court is not persuaded it is proper for the court to unilaterally introduce this additional requirement.

For these reasons, the court **DENIES** Defendant's Motion to Dismiss Plaintiffs' Second Cause of Action.

### C. Age Discrimination under the FEHA (Third Cause of Action)

The FEHA makes it unlawful for an employer, because of "age . . . to discharge [a] person from employment . . . or to discriminate against [a] person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a).

Generally, to establish a *prima facie* case of age discrimination under the FEHA, a plaintiff must provide evidence that: "(1) he [or she] was a member of a protected class,

---

[2] Indeed, Plaintiffs dispute that they ever filed a complaint through any internal complaint process. (Doc. No. 15 at 24).

(2) he [or she] was qualified for the position . . . sought or was performing competently in the position . . . held, (3) he [or she] suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355 (2000). "The specific elements of a prima facie case may vary depending on the particular facts." *Id.* at 355.

In their Complaint, Plaintiffs allege that they were all 40 years or older when they were informed, in 2018, that Defendant was seeking to convert their rolling employment appointments to fixed terms. Compl. at ¶ 62. As evidence of discriminatory motive, Plaintiffs allege that in a 2018 Board meeting, Defendant's Board "cited" the San Diego Branch as being "seen as 'post-mature.'" *Id.* Plaintiffs further allege "[o]n information and belief" this reference to "post-mature" was directed to the leaders of the San Diego Branch being over 40 years old, "which was deemed undesirable by the Board." *Id.*

In their briefings, the crux of the Parties' dispute regarding Plaintiffs' age discrimination claims revolves around whether Plaintiffs have plausibly alleged Defendant acted with discriminatory motive. Specifically, Defendant contends Plaintiffs have not pled any facts explaining what the term "post-mature" means or how the usage of this term can support an inference of discriminatory intent directed at Plaintiffs. (Doc. No. 14 at 25).

The court agrees. Here, Plaintiffs have not alleged sufficient facts to give rise to a plausible claim of age-based discrimination under the FEHA. Plaintiffs' vague allegation Defendant's Board perceived the San Diego Branch as "post-mature," without more, does not give rise to a plausible inference of discriminatory motive. Centrally, Plaintiffs do not identify who made this comment, whether those individuals had any role in converting Plaintiffs' rolling employment terms to fixed terms, the context in which these comments were made, or even whether these purportedly age-related statements were directed at Plaintiffs. Instead, Plaintiffs merely hazard the Board's comment was made

about them before taking yet another leap of logic and concluding the Board's comment plausibly demonstrates Defendant considered Plaintiffs' ages "undesirable."

In this case, the inferences Plaintiffs request that the court draw between the Board's view the San Diego Branch was "seen as 'post-mature'" and Defendant's alleged discriminatory animus is simply too speculative, even on a motion to dismiss. *See Hartman v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008) (the court is not required to accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

For these reasons, the court **GRANTS** Defendant's Motion to Dismiss Plaintiffs' Third Cause of Action.

### D. Wrongful Adverse Employment Action in Violation of Public Policy (Fourth Cause of Action)

In *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 170 (1980), the California Supreme Court held that "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Id*.

The elements of a claim for wrongful termination in violation of public policy are: "(1) an employer-employee relationship"; "(2) the employer terminated the plaintiff's employment"; "(3) the termination was substantially motivated by a violation of public policy"; and "(4) the discharge caused the plaintiff harm." *Yau v. Allen*, 229 Cal. App. 4th 144, 154 (2014) (citation omitted). An employee need not allege termination to bring a *Tameny* claim. Instead, "courts have recognized the [*Tameny*] claim's applicability to employees who have experienced adverse employment actions, such as demotions or suspensions." *Williams v. Sacramento River Cats Baseball Club, LLC*, 40 Cal. App. 5th 280, 288 (2019) (collecting cases).

In this case, it is undisputed Plaintiffs' wrongful employment action claim is based on the same nucleus of facts as Plaintiffs' retaliation claim under the FEHA. Compl. at ¶ 70 (alleging that "[i]t is against public policy to take an adverse employment action

against an employee for refusing to sign a release and non-disparagement agreement[.]"). Defendant, therefore, moves to dismiss Plaintiffs' wrongful employment action claim on the grounds that Plaintiffs did not allege a valid FEHA-based retaliation claim. (Doc. No. 14 at 26-27).

Having found that Plaintiffs adequately pled their FEHA claim for retaliation, the court concludes Plaintiffs' wrongful adverse action claim still stands. *Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 913 (E.D. Cal. 2017) ("Having found that plaintiff has adequately pled her FEHA claims for discrimination and retaliation, the court concludes that plaintiff may maintain derivative claims for wrongful termination."); *see also Gordon v. Nexstar Broad., Inc.*, No. 118CV00007DADJLT, 2021 WL 736271, at *15 (E.D. Cal. Feb. 25, 2021) ("A violation of FEHA may support a claim for wrongful termination."); *Steines v. Crown Media United States, LLC*, No. CV1809293CJCFFMX, 2018 WL 6330600, at *7 (C.D. Cal. Dec. 4, 2018) ("[V]iolations of provisions of FEHA give rise to a tort action for wrongful termination.").

However, to the extent that Plaintiffs' wrongful employment action claim is based on some underlying violation of California Labor Code § 232.5, this claim is insufficiently pled. Plaintiffs have not alleged an independent cause of action for a violation of Labor Code § 232.5. *See* Compl. Instead, Plaintiffs' Complaint merely states, in a conclusory fashion under Plaintiffs' wrongful adverse action claim, that the Transition Agreement violated Labor Code § 232.5. The court is not "bound to accept as true a legal conclusion couched as a factual allegation[.]" *Iqbal*, 556 U.S. at 678.

For these reasons, the court **GRANTS** Defendant's Motion to Dismiss Plaintiffs' Fourth Cause of Action, to the extent this claim is predicated on an underlying violation of California Labor Code § 232.5. Defendant's Motion is **DENIED** in all other respects.

E.  **Failure to Timely Pay Wages (Fifth Cause of Action)**

California Labor Code § 204 requires an employer to pay employees twice monthly on a pre-designated, regular day. *See* Cal. Labor Code § 204(a). The statute, therefore, imposes "an obligation of timely payment of wages upon California employers

and provides rules for scheduling wage payments." *See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889, 904 (2012).

The remedy for a violation of § 204 is found in § 210, which provides that "every person who fails to pay the wages of each employee" as provided for in § 204 "shall be subject to a penalty[.]" Cal. Lab. Code § 210; *see also Singer v. Becton, Dickinson & Co.*, No. 08-CV-821-IEG-BLM, 2008 WL 2899825, at *3 (S.D. Cal. July 25, 2008) ("Section 210 provides the only remedy for failure to comply with 204, i.e., for failure to make timely wage payments, and the remedy is a civil penalty."). Employees can recover these penalties by filing a complaint with the California Labor Commissioner. *See* Cal. Lab. Code § 210(b); *Hansber v. Ulta Beauty Cosms., LLC,* No. 121CV00022AWIJLT, 2021 WL 4553649, at *11 (E.D. Cal. Oct. 5, 2021). In lieu of seeking administrative relief, employees can instead pursue civil penalties by way of a PAGA claim *See* Cal. Lab. Code § 210(c); *Hansber*, 2021 WL 4553649, at *11.

In their Complaint, Plaintiffs allege Defendant failed to pay Plaintiffs the full amount of certain wages earned for each month in violation of Labor Code § 204 and seek penalties under Labor Code § 210. (Doc. No. ¶¶ 73-86). Defendant moves to dismiss Plaintiffs' claim on the basis that there is no private right of action under § 204. (Doc. No.14 at 27). As Plaintiffs correctly point out, however, Defendant's statements of law rest on previous iterations of Labor Code § 210, which dictated that failures to comply with § 204 were subject to civil penalties recoverable only by the California Labor Commissioner. *See Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011).

In 2019, this statutory arrangement changed "when § 210 was amended to allow employees to recover statutory penalties through a complaint to the Labor Commissioner or enforce a PAGA claim for civil penalties." *Hansber*, 2021 WL 4553649, at *12. Accordingly, to the extent Defendant suggests § 204 violations can never be *enforced* by Plaintiffs, this is an incorrect statement of law.

Nevertheless, dismissal of Plaintiffs' untimely wages claim under § 204 is still proper in this case. First, Plaintiffs concede they are not bringing a PAGA enforcement action (Doc. No. 15 at 30), which—outside of seeking administrative relief—is their sole method of seeking penalties under § 210. Second, "[Labor Code] § 204 provides the right to *timely* wages, not a specific amount or calculation of wages." *Barragan v. Home Depot U.S.A.*, Inc., No. 19-CV01766-AJB-AGS, 2021 WL 2828577, at *2 (S.D. Cal. Mar. 29, 2021) (emphasis in original), *on reconsideration in part*, No. 19-CV-01766-AJB-AGS, 2021 WL 3634851 (S.D. Cal. Aug. 17, 2021). "[A] violation of section 204 cannot be premised solely on the claim that an employer underpaid wages." *Carter v. Jai-Put Enter. Inc.*, No. 18-CV-06313-DMR, 2020 WL 3545094, at *10 (N.D. Cal. June 30, 2020); *In re Moffett*, 19 Cal. App. 2d 7, 13 (1937) ("[T]he *sole purpose* of [section 204] is to require an employer of labor who comes within its terms to maintain two regular pay days each month, within the dates required in that section.") (emphasis added).

Here, Plaintiffs allege only that Defendant underpaid their wages; they do not claim they were not paid regular and timely paychecks. "Underpayment of wages is insufficient to establish a violation of section 204." *Carter*, 2020 WL 3545094, at *10; *see also, e.g.*, *Frausto v. Bank of Am., Nat'l Ass'n,* No. 18-CV-01983-MEJ, 2018 WL 3659251, at *10 (N.D. Cal. Aug. 2, 2018) ("[S]ection 204 simply regulates the timing of wage payments and does not provide for the payment of any particular type of wages or create any substantive right to wages."); *Singer*, 2008 WL 2899825, at *3 ("[S]ection 204 does not provide for the payment of any wages nor create any substantive right to wages. The only right furthered by the section is the timely payment of wages.").

To the extent Plaintiffs now assert they *could* have sought underpaid wages under California Labor Code § 218 instead (Doc. No. 15 at 30), this theory is not present in Plaintiffs' Complaint, and Plaintiffs cannot amend their Complaint through their Response to Defendant's Motion to Dismiss. *See Schneider*, 151 F.3d at 1201;

*Matthews*, 2021 WL 949419, at *6. The court, therefore, declines to consider this new legal theory at this time.

For these reasons, the court **GRANTS** Defendant's Motion to Dismiss Plaintiffs' Fifth Cause of Action.

### F. Violation of California's Unfair Competition Laws (Sixth Cause of Action)

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]" Cal. Bus. & Prof. Code § 17200. Because the UCL is "written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007) (quotation marks omitted). "An act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent." *Id.*

Under the "unlawful" prong, the UCL "'borrows' violations of other laws and treats them as 'unlawful practices' that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). In contrast, a UCL claim based on an "unfair" business practice "may be grounded upon a violation of a statute, or be a 'standalone' claim based on an alleged act that "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1135 (N.D. Cal. 2010) (quotation marks omitted); *see also Cel-Tech*, 20 Cal. 4th at 180 ("[A] practice may be deemed unfair even if not specifically proscribed by some other law.").

In their Complaint, Plaintiffs allege Defendant "engaged in unlawful business practices by violating California law, including but not limited to provisions of the California Labor Code and the Fair Housing and Employment Act[.]" Compl. at ¶ 90.

Defendant seeks dismissal of Plaintiffs' Unfair Competition claim as derivative of Plaintiffs' other purportedly inadequately pled claims. (Doc. No. 14 at 27-28). Here,

however, the court has already found Plaintiffs adequately pled their (1) retaliation claim under Labor Code § 1102.5(b) ; and (2) retaliation claim under the FEHA.  Plaintiffs' claim for unfair competition, therefore, also survives to the extent it is derivative of those claims.  *See Walls v. Kiewit Corp.*, No. CV198319PSGJEMX, 2020 WL 2219207, at *7 (C.D. Cal. Apr. 2, 2020) (denying motion to dismiss unfair competition claim based on violation of FEHA, where plaintiff adequately alleged underlying FEHA claim).

Conversely, because the court has dismissed Plaintiffs' claims for: (1) failure to timely pay wages under Labor Code § 204; and (2) age discrimination under the FEHA, Plaintiffs may not rely on those claims as predicates for an unlawful prong UCL claim.  *See Hoai Dang v. Samsung Elecs. Co.*, No. 14-CV-00530-LHK, 2018 WL 6308738, at *9 (N.D. Cal. Dec. 3, 2018); *Ng v. US Bank, NA*, No. 15-CV-04998-KAW, 2016 WL 5390296, at *8 (N.D. Cal. Sept. 26, 2016) ("Plaintiff cannot plead a UCL claim based on unlawful business practices because the predicate violations have been dismissed with prejudice.").

This leaves Plaintiffs' contention that they may assert a "standalone" claim for unpaid wages.  (Doc. No. 15 at 31).  Even if Plaintiffs *could* assert such a standalone claim, the court does not find that they sufficiently did so here.  Instead, Plaintiffs' UCL cause of action is specifically predicated on Defendant allegedly engaging in "*unlawful practices by violating California law*[.]"  Compl. at ¶ 90 (emphasis added).  Indeed, in supporting Plaintiffs' contention a UCL claim can standalone, Plaintiffs confusingly point to their allegations for unpaid wages under § 204(a).  (Doc. No. 15 at 32).

For these reasons, the court **DENIES** Defendant's Motion to Dismiss on Plaintiffs' Sixth Cause of Action, to the extent Plaintiffs' claim is predicated on Plaintiffs' retaliation claim under Labor Code § 1102.5(b) or retaliation claim under the FEHA.  Defendant's Motion is **GRANTED** in all other respects.

## CONCLUSION

In sum, the court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss as follows:

1. Defendant's Motion to Dismiss Plaintiffs' First Cause of Action for Retaliation in Violation of California Labor Code § 1102.5 is **GRANTED**, to the extent Plaintiffs' claim is predicated on 2 CFR Part 200. Defendant's Motion is **DENIED** in all other respects.

2. Defendant's Motion to Dismiss Plaintiffs' Second Cause of Action for Retaliation in Violation of California Government Code § 12940(h) is **DENIED**.

3. Defendant's Motion to Dismiss Plaintiffs' Third Cause of Action for Age Discrimination under the FEHA is **GRANTED**.

4. Defendant's Motion to Dismiss Plaintiffs' Fourth Cause of Action for Wrongful Adverse Employment Action in Violation of Public Policy is **GRANTED**, to the extent this claim is predicated on an underlying violation of California Labor Code § 232.5. Defendant's Motion is **DENIED** in all other respects.

5. Defendant's Motion to Dismiss Plaintiffs' Fifth Cause of Action for Failure to Timely Pay Wages is **GRANTED**.

6. Defendant's Motion to Dismiss Plaintiffs' Sixth Cause of Action for Violation of California's Unfair Competition Laws is **DENIED**, to the extent Plaintiffs' claim is predicated on Plaintiffs' retaliation claim under Labor Code § 1102.5(b) or retaliation claim under the FEHA. Defendant's Motion is **GRANTED** in all other respects.

Leave to amend is hereby **GRANTED**. Should Plaintiffs elect to file an Amended Complaint, they must do so **within twenty days** of the docketing of this Order.

**IT IS SO ORDERED.**

DATED: January 7, 2022

_____
JEFFREY T. MILLER
United States District Judge