UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DON CLEVLAND, et al.,

       Plaintiffs,

v.

LUDWIG INSTITUTE FOR CANCER RESEARCH LTD.,

       Defendant.

Case No.:  21cv871 JM (JLB)

**ORDER ON PARTIAL MOTION TO DISMISS AND MOTION TO SEAL**

   Presently before the court is Defendant Ludwig Institute for Cancer Research Ltd.'s ("Ludwig") Partial Motion to Dismiss (Fed. R. Civ. Proc. 12(B)(6)) Plaintiffs' First Amended Complaint (Doc. No. 31) and Plaintiffs' Motion to Seal (Doc. No. 35). The motions have been fully briefed and the court finds them suitable for determination on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d)(1).  For the reasons set forth below, the court **grants-in-part** and **denies-in-part** Defendant's Partial Motion to Dismiss and **denies** Plaintiffs' Motion to Seal.

///

///

///

1

## I.  BACKGROUND

### A.  Procedural Background

On May 5, 2021, Plaintiffs Don Cleveland, Arshad Desai, Frank Furnari, Richard Kolodner, Paul Mischel, Karen Oegema, and Bing Ren ("Plaintiffs") filed suit against Defendant.  *See* Doc. No. 1. ("Compl.")  Plaintiffs' Complaint asserted six causes of action arising primarily under labor and employment laws.  *Id.*

On July 6, 2021, Defendant filed a Motion to Dismiss.  (Doc. No. 14).  Plaintiffs filed a Response (Doc. No. 15), and Defendant subsequently filed a Reply (Doc. No. 16).  On January 7, 2022, this court denied-in-part and granted-in-part, Defendant's motion to dismiss.

On March 2, 2022, Plaintiffs filed an Amended Complaint ("FAC"), again, alleging six causes of action.  (Doc. No. 27.)

On March 31, 2022, Defendant Ludwig filed its motion for dismissal under Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 31.)  Plaintiffs filed a response in opposition (Doc. No. 34), and Defendant duly filed its reply (Doc. No. 37).

### B.  Factual Background[1]

The FAC alleges substantially similar allegations to that of the original complaint.  The causes of action arise from Defendant's employment of Plaintiffs at Defendant's research branch ("San Diego Branch") at the University of California, San Diego ("UCSD") and Defendant's subsequent decision to close this branch.

Specifically, Plaintiffs assert that: Defendant retaliated against Plaintiff Kolodner after Kolodner disclosed his belief Defendant's 2020-2021 budgets were allegedly insufficient to meet Defendant's various legal obligations (Count I); Defendant retaliated against all Plaintiffs after each declined to sign the Transition Agreement (Count II); age

---

[1] The Factual Background is derived from Plaintiffs' FAC.  In a Motion to Dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

discrimination (Count III); wrongful adverse employment action in violation of public policy (Count IV); breach of contract and penalties for failure to timely pay wages (Count V); and unfair competition (Count VI).  *Id.*  ¶¶ 46-101.

### 1.  Defendant's Affiliation Agreement with UCSD

In 1991, Defendant entered into an Affiliation Agreement with UCSD to establish a research branch.  (Doc. No. 27 ("FAC.") ¶ 17).  The Affiliation Agreement required Defendant to appoint a Branch Director and select employees for the "continuous, active conduct of medical research." *Id.* at ¶¶ 17, 19-20.

### 2.  Plaintiffs' Employment

According to the FAC, Plaintiffs are "leading scientists who have committed their research programs to pursuing breakthroughs in cancer prevention and control."  *Id.* at ¶ 1.  Between 1996 and 2016, Plaintiffs each accepted written employment offers from Defendant to establish laboratories at Defendant's San Diego Branch ("Laboratory Support Agreements").  *Id.* ¶¶ 7-13, 22.  The Laboratory Support Agreements promised Plaintiffs an annual budget that would include Plaintiffs' salaries, benefits, and funding for Plaintiffs' research.  *Id.* ¶ 22.  Defendant also agreed to pay Plaintiffs at UCSD's salary scale.  *Id.* ¶ 23.  In addition, Plaintiffs separately entered employment contracts with Defendant, under which Plaintiffs were appointed as Defendant's "Members" for a rolling term of five years.  *Id.* ¶ 25.

Defendant's Member-Track Appointment and Promotion Policy is applicable to each of the Plaintiffs and states that a "rolling five year appointment" is convertible to a fixed term only after review and recommendation by Ludwig's Scientific Advisory Committee and approval by the Ludwig Board of Directors.  *Id.* ¶ 26.  This required review process of Plaintiffs' rolling terms of employment did not occur.  *Id.*

### 3.  Decision to Close San Diego Branch

In a board meeting held In April 2018, Defendant made the decision to close the San Diego Branch by December 31, 2023.  *Id.* ¶¶ 3, 30.  Minutes from the meeting disclose that the Branch was viewed as "post mature."  *Id.* ¶ at 30.  Earlier board minutes refer to

Plaintiffs as being "senior scientists," noted that Plaintiffs were over the age of 64/65, discussed succession arrangements, and suggested Plaintiffs' ages made them "incapable of a 'modern approach' because they were 'at the age of 64/65.'" *Id.* at ¶ 31.

On or about May 21, 2018, Defendant sent letters to Plaintiffs informing them their rolling five-year employment terms were being converted into four- or five-year fixed terms, such that each Plaintiff would be terminated prior to the San Diego Branch's closure date. *Id.* ¶ 33. The required review process of Plaintiffs' rolling terms of employment did not occur. *Id.* ¶ 26.

Defendant also unilaterally imposed a multi-year budget that was allegedly insufficient to provide adequate funding for Plaintiffs' research. *Id.* ¶ 32.

On February 12, 2019, at Defendant's request, Plaintiffs (except Plaintiff Mischel) attended a meeting with Defendant's President and CEO, Edward McDermott, and Defendant's Scientific Director, Dr. Chi Van Dang. *Id.* ¶¶ 5, 35. At the meeting, Defendant presented Plaintiffs with the same reduced budget and made receiving this reduced funding contingent upon Plaintiffs executing a Transition Agreement and Release ("Transition Agreement"). *Id.* ¶ 36.

The Transition Agreement required Plaintiffs to diligently pursue their scientific research as Defendant's employees despite the cut in research funding. *Id.* ¶ 37. The Transition Agreement also included a unilateral release and non-disparagement clause and obligated Plaintiffs to ensure Defendant continued to receive UCSD's cooperation. *Id.* At the meeting, McDermott allegedly threatened "consequences" if Plaintiffs did not sign the Transition Agreement. *Id.* ¶ 5. None of the Plaintiffs agreed to the Transition Agreement's terms. *Id.* at ¶ 39.

After they declined to sign the Transition Agreement, Plaintiffs allege Defendant followed through on its threats and retaliated by further cutting Plaintiffs' research budgets for 2020 and 2021. *Id.* ¶ 41. Beginning July 1, 2019, Defendant also refused to pay cost of living and merit increases to match the UCSD salary scale. *Id.* ¶ 42.

On October 31, 2019, Plaintiff Kolodner wrote a letter to McDermott, Notter, and John Gordon, the Chair of Defendant's Audit Committee, providing an analysis of why the 2020-2021 budget was allegedly insufficient to meet Defendant's legal obligations. *Id.* ¶ 43.  Kolodner was demoted four days later.  *Id.*

On November 4, 2019, and November 15, 2019, Plaintiffs were told Defendant would not fund any research starting in 2020.  *Id.* ¶ 44. Defendant further directed Plaintiffs to invalidate employment contracts for certain lab personnel.  *Id.* at ¶ 44.  On May 5, 2021, Plaintiffs filed complaints with the Department of Fair Employment and Housing and received right to sue letters.  *Id.* ¶ 45.  These letters were served on Defendant via certified mail on the same day they were received.  *Id.*

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  Ordinarily, for purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008).  But, even under the liberal pleading standard of Rule 8(a)(2), which requires only that a party make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555).  "Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

21cv871 JM (JLB)

### III.   DISCUSSION

Defendant moves to dismiss Plaintiffs' first, third and fifth claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 31-1).  The court addresses each of the causes of action in turn.

### 1.   Retaliation in Violation of California Labor Code § 1102.5 (First Cause of Action)

In its motion to dismiss, Defendant no longer contests Plaintiffs provided insufficient specificity as to which statute, rule, or regulation Plaintiff Kolodner believed was being violated.  (Doc. No. 31-1 at 10[2]).  Rather, Defendant contends Plaintiffs' amended allegations now "demonstrate a more fundamental flaw." (Doc. No. 31-1 at 10).  Specifically, Defendant argues section 1102.5 does not protect employees from retaliation when they report information to individuals who were "the ones actually implementing or engaging in the alleged unlawful activity."  *Id.*   In other words, Defendant argues that Plaintiff Kolodner's alleged disclosure was not a protected whistleblower activity.

As this court explained previously, California Labor Code § 1102.5(b) is a whistle-blower statute that protects employees from retaliation when they have "reasonable cause to believe" that their employer is in "violation of state or federal statute" or "local, state, or federal rule or regulation."  To state a *prima facie* case for retaliation in violation of California Labor Code § 1102.5, a plaintiff must show that: "(1) [he or she] engaged in a protected activity, (2) [his or her] employer subjected [him or her] to an adverse employment action, and (3) there is a causal link between the two."  *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1384 (2005).

In the FAC, Plaintiffs allege Kolodner was demoted from his position as a Branch Director as a consequence of his "disclos[ing]" to two of Defendant's board members and

---

[2] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

21cv871 JM (JLB)

Defendant's President and CEO that Defendant's 2020-2021 budget "was insufficient to meet [Defendant's] legal obligations[.]"  FAC at ¶¶ 47-48.  Plaintiffs allege that the decision to terminate them was made by the Board and Defendant's President and CEO.

### a. *Person with authority*

The court begins by looking at to whom Kolodner made the disclosures.

For an activity to be afforded the protections of section 1102.5, a disclosure must be made "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or non-compliance." CAL. LAB. CODE § 1102.5(b).  *See Smiley v. Hologic, Inc*. Case No. 16CV158-WQH-MDD, 2017 WL 1354787, at *10 (S.D. Cal. Apr. 12, 2017) ("To constitute a protected activity pursuant to section 1102.5, the disclosure must be 'to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or non-compliance.'").

Here, it is undisputed that Kolodner wrote to three people asking them to investigate his concerns, namely: (1) the President and CEO (Ed McDermott), (2) the Chairman of the Board (John Notter), and (3) the Chair of the Audit Committee (John Gordon).  FAC ¶ 6.  These individuals ordinarily qualify as persons of authority as described by section 1102.5.  *See, e.g., Roadrunner Int'l Servs., LLC v. T.G.S. Transp., Inc.,* 2019 WL 3946895, at *7 (E.D. Cal. Aug. 21, 2019) (finding communications outlining alleged financial inaccuracies that were sent to company executives, who the whistleblower believed had violated the law or who had both the authority over the whistleblower and the ability to control and correct the potential violations of law that the whistleblower had raised, were enough to show whistleblower engaged in protected activity within the meaning of section 1102.5(b)); *Thomas v. Starz Entm't LLC*, No. 2:15-cv-09239-CAS(AFMx), 2016 WL 5421992, at *8 (C.D. Cal. Sept. 26, 2016) (concluding that plaintiff adequately alleged that he engaged in a protected activity because he made a disclosure to a person with authority to investigate the violation).

Defendant does not appear to seriously dispute Messrs. McDermott, Notter, and Gordon were "persons of authority." (*See* Doc. Nos. 31-1; 37). Notably, Defendant's own Whistleblower Policy also provides that "non-compliance with legal and regulatory requirements" and "questionable accounting practices" should be reported to an immediate supervisor, the Director of the reporting person's Branch, the Vice President of Human Resources, or the Chair of the Audit Committee of the Institute's Board of Directors. (*See* Doc. No. 34.2 at 3 ¶ 2.1, 2.2.[3])

For pleading purposes, the court, therefore, accepts the premise that Messrs. McDermott, Notter, and Gordon are "persons of authority" under section 1102.5.

### b. Protected Whistleblower Activity

Having established that the individuals to whom Kolodner made the disclosure would qualify as persons of authority, the court turns to whether the disclosure should be afforded the protections of section 1102.5. Not surprisingly, the parties dispute whether Kolodner's actions constitute protected whistleblower activity. They also take differing positions on the applicability of the California Court of Appeal's decision, *Mize-Kurzman v. Marin Community College District*, 202 Cal. App. 4th 832 (2012), the seminal case setting forth what constitutes a protected activity under Section 1102.5.

At the time *Mize-Kurzman* was decided, "section 1102.5(b) did not provide protections for employees who report internally within a company or organization." *Smiley*, 2017 WL 1354787, at *10. In *Mize-Kurzman,* the court held "the report of

---

[3] In its opposition, Plaintiffs ask the court to take judicial notice of: Exhibit 1, Ludwig Institute for Cancer Research Ltd., Whistleblower Policy (Doc. No. 34-1). Plaintiffs move for judicial notice under Federal Rule of Evidence 201 because the document is capable of accurate and ready determination by resorting to resources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b)(2). Defendant did not oppose the request for judicial notice. Accordingly, the court **GRANTS** Plaintiff's request and takes judicial notice of Exhibit 1, (Doc. No. 34-2.) *See e.g.*, *Cartwright v. Univ. of Cal.*, No. 2:05-cv-2439-MCE-KJM, 2006 U.S. Dist. LEXIS 91275, at *22 n.11 (E.D. Cal. Dec. 18, 2006) (granting unopposed request to take judicial notice of internal grievance procedure).

8

information that was already known did not constitute a protected disclosure." 202 Cal. App. 4th at 858. In so holding, the court looked to the "ordinarily understood meaning" of the term "disclosure," which the court read to mean: "to reveal something that was hidden and not known." *Id.* Looking to the plain language of the statute, the court held there was "no reason to believe" the term "disclosure" was being "used in anything other than their ordinary sense"—which the court read as "to reveal something that was hidden and not known." *Id.* at 858–59.

Finally, the court found its interpretation was "consistent with those cases holding that the employee's report to the employee's supervisor about the supervisor's own wrongdoing is not a 'disclosure' and is not protected whistleblowing activity, because the employer *already knows* about his or her wrongdoing." *Id.* at 859. This was because "criticism delivered directly to the wrongdoers does not further the purpose of either the [federal or California] whistleblower laws to encourage disclosure of wrongdoing to persons who may be in a position to act to remedy it." *Id.*

In 2013, section 1102.5(b) was amended to read:

> An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, *to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance*, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

CAL. LAB. CODE § 1102.5 (West) (emphasis added).

Although Plaintiffs contend the *Mize-Kurzman* decision is outdated law, post-amendment courts have consistently continued to read the term "disclosure" in the same

1    manner as the *Mize-Kurzman* court.  *See People v. Kolla's Inc.*, No. G057831, 2021 WL
2    1851487, at *9 (Cal. Ct. App. May 10, 2021), *review granted* (Sept. 1, 2021) ("[W]e do
3    not think *Mize-Kurzman's* interpretation of section 1102.5 is outdated or unreasonable.");
4    *Hager v. Cty. of L.A.*, 228 Cal. App. 4th 1538, 1550 (2014) ("[W]e accept the dictionary
5    definition of 'disclosure' as used by the court in *Mize-Kurzman*[.]"); *see also e.g.*,
6    *Trujillo v. Skaled Consulting, LLC*, No. 21CV1106-CAB-BGS, 2021 WL 4150380, at *3
7    (S.D. Cal. Sept. 13, 2021) (adopting definition of "disclosure" set forth in *Mize-*
8    *Kurzman*); *Killgore v. Specpro Pro. Servs., LLC*, No. 5:18-CV-03413-EJD, 2019 WL
9    6911975, at *9 (N.D. Cal. Dec. 19, 2019) ("*Hager* and *Mize-Kurzman* []both concern
10   situations where an employee discloses a legal violation to someone who does not
11   already know about it.  A contrary finding would make the whistleblower statute limitless
12   and render the 'disclosure' requirement meaningless.") (emphasis in original); *Thomas v.*
13   *Starz Entm't LLC*, No. 2:15-cv-09239-CAS(AFMx), 2016 U.S. Dist. LEXIS 93177, at
14   *15 (C.D. Cal. July 11, 2016) ("[T]he Court here accordingly reads the term 'disclosure'
15   in the same manner as the Court of Appeal in *Mize-Kurzman* and *Hager*.").

16       Thus, "a complaint about illegal conduct made to a supervisor who engages in the
17   misconduct is not a "disclosure" and is not protected whistleblowing activity, as the
18   recipient already knows about his or her own wrongdoing." *Trujillo,* 2021 WL 4150380,
19   at *3 (citing *Mize-Kurzman v. Marin Cmty. Coll. Dist.*, 202 Cal. App. 4th 832, 859
20   (2012)).

21       Here, Defendant contends that because Kolodner simply reported the alleged
22   "unlawful conduct to the supervisors (and only those supervisors) who were responsible
23   for the very conduct about which he had complained," (Doc. No. 31-1 at 11), this did not
24   constitute protected whistleblower activity.  The court is not persuaded.  The FAC
25   explicitly identifies McDermott as presenting Kolodner with a "tapering research
26   budget," (*see* FAC ¶¶ 35, 36), and multi-year reduced research budget to Plaintiffs at a
27   February 12, 2019, meeting, (*id.* at ¶¶ 30, 36).  However, the FAC only alleges that the
28   Board made the overall decision to close the San Diego Branch, (*id* ¶¶ 30, 36), and no

facts are pled regarding what Messrs. Notter and Gordon's roles were in the day-to-day operations of the San Diego Branch, including passing the 2020 and 2021 budgets, compliance with wage laws, and compliance with federal regulations relating to National Institute of Health grants. In other words, there is nothing in the FAC alleging that Messrs. Notter and Gordon knew of the alleged wrongdoing – i.e., if Kolodner was complaining about what they already knew.

For pleading purposes only, the court, infers that neither Notter nor Gordan were aware of the alleged protected disclosures, and, therefore, the complaint Kolodner made to them was a protected disclosure. *See Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (in reviewing a motion to dismiss, the court must "draw all reasonable inferences in favor of the nonmoving party."). Accordingly, Defendant's motion to dismiss Plaintiffs' First Cause of Action is **DENIED**[4].

_____

[4] The court is also not persuaded by Plaintiffs' procedural argument that Defendant is barred from attacking Plaintiffs' section 1120.5 claim on any basis that was not already raised in Defendant's First Motion to Dismiss. (Doc. No. 34 at 14). Plaintiffs cite to Federal Rule of Civil Procedure 12(g)(2) in support, which states that: "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

While some federal courts have applied Federal Rule of Civil Procedure 12(g)(2)'s limitations strictly, "the federal district courts of California have not taken this position." *Moreno v. Castlerock Farming & Transp. Inc.*, No. 1:12-CV-0556 AWI JLT, 2022 WL 902597, at *4 (E.D. Cal. Mar. 28, 2022) (collecting cases); *see e.g.*, *In re WellPoint, Inc. Out-Of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 893 (C.D. Cal. 2012) ("Courts in this Circuit . . . have permitted defendants moving to dismiss an amended complaint to make arguments previously made and to raise new arguments that were previously available."); *Hamana v. Kholi*, No. 10CV1630 BTM BGS, 2011 WL 5077614, at *1 (S.D. Cal. Oct. 25, 2011) ("Under Fed. R. Civ. P. 12(g)(2), a defendant can move to dismiss an amended complaint for failure to state a claim based on arguments not raised in its first motion to dismiss.").

## 2. Age Discrimination under the FEHA (Third Cause of Action)

Defendant moves for dismissal of the Plaintiffs' age discrimination claims, once again arguing that Plaintiffs have not pled any facts explaining what the term "post-mature" means or how the usage of this term can support an inference of discriminatory motive directed at Plaintiffs. (Doc. No. 31-1 at 6, 12-14.)

As the court explained previously, the FEHA makes it unlawful for an employer, because of "age . . . to discharge [a] person from employment . . . or to discriminate against [a] person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a).

Generally, to establish a *prima facie* case of age discrimination under the FEHA, a plaintiff must provide evidence that: "(1) he [or she] was a member of a protected class, (2) he [or she] was qualified for the position . . . sought or was performing competently in the position . . . held, (3) he [or she] suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355 (2000). "The specific elements of a prima facie case may vary depending on the particular facts." *Id.* at 355.

Here, Plaintiffs allege that they were all 40 years or older when they were informed, in 2018, that Defendant was seeking to convert their rolling employment appointments to fixed terms. FAC ¶ 64. As evidence of discriminatory motive, Plaintiffs allege that in a 2018 Board meeting, Defendant's Board "cited" the San Diego Branch as being "viewed negatively as 'post-mature.'" FAC ¶ 65. Since the Branch consists entirely of Plaintiffs, Plaintiffs further allege:

> [t]he statement, thus was directed to and described Plaintiffs, and in particular the leaders of the Branch, Doctors Kolodner and Cleveland, and the fact that they were over forty years old, which the Board deemed undesirable, and which, on information and belief formed a material basis

12

> for the decision to close the Branch and therefor was also a material basis for terminating Plaintiffs rolling appointments.

*Id.* As further evidence of discriminatory intent, Plaintiffs point to earlier statements made at board meetings. In December 2013, a board member discussed the need for "succession arrangements" at the Branch because senior scientists, including Plaintiffs Cleveland and Kolodner, were "older than 60 years of age and therefore not expected to be the Branch Director in ten years' time." *Id.* Additionally, in December 2014, during a discussion about whether Defendant's lease for the Branch at UCSD should be extended, a board member stated that three members of the Branch (which included Plaintiffs Cleveland and Kolodner) were "all at the age of 64/65" and "that the Institute had the opportunity to redirect 'into a modern LICR Branch.'" *Id.* Plaintiffs allege this statement shows discriminatory bias because it contrasts the preferred "modern" approach with that of Plaintiffs, "whom the Board member suggested were incapable of a 'modern' approach solely because they were 'at the age of 64/65,' and no other reason." *Id.* Plaintiffs also maintain that Defendant, as illustrated by the statements of its board members, viewed the age of the Plaintiffs, and particularly Cleveland and Kolodner, to be an impairment and "had designs to terminate Plaintiffs' rolling term appointments so that they could hire younger scientists to take their places." *Id.*

Defendant argues the comments made by the board members were too temporally remote to support an inference of discriminatory intent. (Doc. No. 31-1 at 14.) It is true that "[i]solated and stray remarks are insufficient to establish discrimination without other indicia of discriminatory intent." *Sneddon v. ABF Freight Sys.*, 489 F. Supp. 2d 1124, 1130 (S.D. Cal. 2007). Nevertheless, as Plaintiffs note, the earlier comments made by Defendant's board members do not "form the basis" of Plaintiffs' discrimination claim. *Id.* at 20. Instead, Plaintiffs provide these comments as context to show how the term "post-mature" was used in 2018 and as evidence that Defendant's Board already considered Plaintiffs' age to be problematic in 2014. *Id.* at 20.

13

Here, the court finds Plaintiffs have alleged additional material facts as sufficient evidence of discriminatory motive. Although the remarks were made at board meetings in 2013 and 2014, they were, arguably, ageist, and could plausibly provide context for what Defendant meant by the term "post-mature." Further, Plaintiffs proffer that "they could additionally plead that the [April 2018 minutes] reflect that the comment directed to Plaintiffs' post-maturity was made twice as a basis for closing and prematurely winding down the Branch," once by Dang, and once by board member, Hellman. *See* Doc. No. 36 at 21[5]. Later, Dang was a signatory on the letters to Plaintiffs purporting to convert their terms. (FAC ¶¶ 33, 40.)

Put another way, as alleged, the Board Minutes in 2013, 2014, and 2018, show that on more than one occasion, comments were made that referenced Plaintiffs' age, from which a plausible inference can be made that Defendant considered Plaintiffs ages "undesirable." As the Ninth Circuit has held, "very little such evidence is necessary to raise a genuine issue of fact regarding an employer's motive[.]" *Schnidrig v. Columbia Mach.*, 80 F.3d 1406, 1409 (9th Cir. 1996) (quoting *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985)). Instead, "any indication of discriminatory motive . . . may suffice to raise a question that can only be resolved by a factfinder."). *Id.*; *see also Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 310 (2010) ("The *prima facie* burden is light; the evidence necessary to sustain the burden is minimal.").

Further, Plaintiffs' FAC raises questions as to whether Defendant's inconsistent actions in converting Plaintiffs' rolling employment terms were a pretext for age discrimination. *See* FAC ¶¶ 33, 66. Specifically, it is alleged Plaintiffs were originally

---

[5] On April 18, 2022, along with their opposition to the motion to dismiss, Plaintiffs concurrently filed an Application to File under Seal, (Doc. No. 35.) In the motion, Plaintiffs state that they are filing the application solely to ensure compliance with the Paragraph 7 of the limited protective order in place in this case. (*Id.* at 3.) Plaintiffs maintain that the information described in the opposition does not relate to third-party scientists, financial audits, or proprietary research. (*Id.* at 4.) The court agrees. Plaintiffs' Application is, therefore, **DENIED**.

informed their rolling terms were being converted to fixed terms under Section 6.6 of Defendant's Member-Track Appointment and Promotion Policy ("Member Policy"). *Id.* at ¶ 66.  However, under Section 6.6, before Plaintiffs' rolling term could be so converted, Plaintiffs were entitled to receive individual reviews and recommendations from the Scientific Advisory Committee.  *Id.*  No reviews occurred.  *Id.*  Instead, Plaintiffs allege they then received "amended" letters converting their rolling terms to fixed terms under Section 7 of the Member Policy.  *Id.*  However, Plaintiffs allege such a conversion would also be inappropriate under Section 7, because Section 7 only provides for termination at the time a Branch is closed.  *Id.*  Given the lack of any "credible grounds or cause" provided by Defendant, Plaintiffs allege "the adverse actions taken by [Defendant] against Plaintiffs in converting their rolling term appointments to a fixed term was motivated by a wrongful discriminatory purpose."  *Id.*

For purposes of the motion to dismiss, these allegations plausibly allege a discriminatory motive.  Accordingly, Defendant's motion to dismiss Plaintiffs' Third Cause of Action is **DENIED**.

### 3. Breach of Contract and Penalties for Failure to Timely Pay Wages (Fifth Cause of Action)

Defendant moves for dismissal of this cause of action, arguing (1) Plaintiffs have restyled it as a breach of contract claim without permission; and (2) the claim is precluded because it constitutes claim splitting. (Doc. No. 31-1 at 14-18.)  In opposition, Plaintiffs argue that nothing in the court's earlier order limited the theory on which they could amend the fifth cause of action, Defendant is precluded from asserting claim splitting, and that the claim has been adequately alleged.  (Doc. No. 34 at 23-29.)

#### a. Claim Splitting

Because this is a diversity action, state law controls whether the earlier filed, *Cleveland v. Ludwig Institute for Cancer Research Limited*, No. 3:19-cv-021410JM-JLB (S.D. Cal.) (hereinafter "*Ludwig I*"), has a preclusive effect on Plaintiffs' claim for breach of contract and failure to pay timely wages in this action, (hereinafter "*Ludwig*

*II")*. *Jacobs v. CBS Broad., Inc*., 291 F.3d 1173, 1177 (9th Cir. 2002); *see also Pardo v. Olson & Sons, Inc.,* 40 F.3d 1063, 1066 (9th Cir.1994) ("Because this is a diversity case, we apply the collateral estoppel rules of the forum state...."). "California law [] determines the res judicata effect of a prior federal court judgment by applying federal standards." *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982). Accordingly, this court will apply federal standards to this inquiry as directed by California law.

Generally, Plaintiffs "have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 886 (9th Cir. 2022) (internal quotations and citations omitted). The test used for claim preclusion is "borrow[ed]" to determine if "improper claim-splitting is present." *Id.* Thus, the court examines if the second suit involves: (1) the same causes of action as the first; and (2) the same parties or their privies." *Id.* (citing *Adams v. Cal. Dep't of Health Servs.,* 487 F.3d 684, 688 (9th Cir. 2007) (overruled on other grounds).

Determining if two suits involve the same causes of action requires consideration of four factors, namely:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Mendoza,* 30 F.4th at 887 (citation omitted). The fourth factor is the "most important" factor. *Id.*

In *Ludwig I*, Plaintiffs asserted a breach of contract claim premised on Defendant's alleged failure to provide salaries and benefits as set forth in the Laboratory Support Agreements between the parties. (*See* Second Amended Complaint "SAC", Doc. No. 26, ¶¶ 217-303 in *Ludwig I*). There, as of July 1, 2019, a failure to pay "cost of living increases and merit increases … required by the obligation to match member/faculty

salaries to the relevant UCSD salary scales" is alleged.  *Id.* ¶ 138.  Here, Plaintiffs are also alleging that "Plaintiffs would be paid at the salary scale that would be applied by UCSD," and "duly increase[d] Plaintiffs' salaries for cost of living increases and/or merit increases annually pursuant to UCSD's salary scales, until starting in and around July 1, 2019," (Doc. No. 27 at ¶ 76).  Thus, both claims call for a determination of the same or substantially related questions of law and would entail duplication of evidence.  Finally, both cases involve the same nucleus of facts i.e., the budgeting decisions made regarding the Branch, from which Plaintiffs' salaries were paid, the alleged breach of the contracts and Defendant's ultimate decision to close the Branch.  (*Compare* Doc. No. 27 *with* SAC, Doc. No. 26, in *Ludwig I*).  Noone disputes that both suits involve the same parties.

In opposition, Plaintiffs argue that claim splitting does not apply to events occurring after the filing of *Ludwig I*.  Specifically, Plaintiffs contend that their failure to pay timely wages accrues anew every month under California Labor Code section 210, therefore, Plaintiffs can pursue their statutory wage claim from November 8, 2019, forward, the day after *Ludwig I* was commenced.  (Doc. No. 34 at 29.)  Not so.  The filing of the Amended Complaint in *Ludwig I* on July 8, 2020, determines the scope of the litigation.  *See L.A. Branch NAACP v. L.A. Unified Sch. Dist.,* 750 F.2d 731, 739 (9th Cir. 1984) (holding that the operative complaint frames the scope of the pleading which may be barred by res judicata, unless a supplemental pleading is filed bringing in events outside the scope).  At the time Plaintiffs filed the Amended Complaint in *Ludwig I,* they knew that failure to pay timely wages under the California Labor Code was part of the breach of employment contract dispute between the parties; thus, Plaintiffs should have raised anything they had to say about the claim at that time.  *See Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) ("If two actions involve the same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.").  Additionally, Plaintiffs seek substantially the same relief in both actions—compensatory damages,

exemplary damages or civil penalties, pre-judgment interest, and attorney's fees and costs.

Accordingly, to the extent that Plaintiffs are seeking to litigate a breach of contract and penalties for failure to timely pay wages claim under California Labor Code section 210, the court finds that any claim brought before July 8, 2020, constitutes claim-splitting. However, to the extent that Plaintiffs seek to litigate events arising after the filing of the Amended Complaint, the California Labor Code section 210 claim can be pursued in the instant action.

Ordinarily, this would be the end of the court's analysis but, since Defendant previously argued against the joinder of the two lawsuits, the court will turn to Plaintiffs' judicial estoppel argument.

### b.  Judicial Estoppel

Plaintiffs argue that Defendant is estopped from asserting Plaintiffs' wage claim would constitute claim splitting because it previously argued in opposition to Plaintiffs' motion to consolidate this case with *Ludwig I* that the two cases should maintain their separate nature. (Doc. No. 34 at 27.)

Judicial estoppel is an equitable doctrine, the purpose of which "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *New Hampshire v. Maine*, 532 U.S. 742, 749-750 (2001) (citation and internal quotation marks omitted).

Three factors may be examined by courts in determining whether to apply the doctrine of judicial estoppel: (1) whether the party's later position was inconsistent with its initial position; (2) whether the party successfully persuaded the court to accept its earlier position so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped from asserting the inconsistent position. *New Hampshire*, 532 U.S at 750-51.

21cv871 JM (JLB)

In denying Plaintiffs' motion for consolidation, this court summarized Defendant's position as being agreeable to coordinating the two cases, but that Defendant argued consolidation was premature because the claims in *Ludwig II* may be disposed of without further motion practice and the two cases raised "distinct issues of law and fact." (*See* Doc. No. 13 at 4, in *Ludwig II*.) This court went on to note the very different phases of the two litigations, the factual similarities before concluding: "Plaintiffs have alleged different causes of action in these cases, thereby presenting the court with different legal questions. The potentially significant legal differences between the two cases also weighs against premature consolidation." *Id.* at 5. Of course, Defendant's position and this court's conclusion occurred before the FAC in *Ludwig II* was filed. Regardless, Defendant successfully argued against consolidation; thus, it would be unfair if Plaintiffs were not allowed to pursue the full extent of their breach of contract/wage claim. *Cf. Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328, 99 S. Ct. 645, 58 L.Ed.2d 552 (1979) ("[T]he requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard." (internal quotation marks omitted)); *Ross v. Int'l Bhd. of Elec. Workers*, 634 F.2d 453, 458 (9th Cir.1980) ("The question [before applying res judicata to bar the second suit] is ... whether [plaintiff] had a fair opportunity to litigate that claim before a competent court prior to bringing it to the court below.").

Consequently, the court is left facing the situation where Plaintiffs: (1) have not had a full opportunity to litigate their breach of contract/wage claim; and (2) seek to bring a breach of contract/wage claim in a subsequent suit that involves the same or substantially similar facts and events as those alleged in *Ludwig I,* thus imputing the claim splitting issues discussed above. In light of these novel circumstances, and in an attempt to protect the court from having to expend judicial resources on litigating the contract/wage claim in a piecemeal fashion, the most equitable solution appears to be for Plaintiffs to be given the opportunity to amend the SAC in *Ludwig I* to add this claim. *See Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96

L.Ed. 200 (1952) ("Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems."). *See also Adams*, 487 F.3d at 688 (the Ninth Circuit stated that a district court "*may* exercise its discretion" to dismiss a duplicative later-filed action "[a]fter weighing the equities of the case") (emphasis added); *FastVDO LLC v. LG Elecs. Mobilecomm U.S.A., Inc.*, Case No.: 16-cv-02499-H-WVG, 2016 WIL 9526400 at *4 (S.D. Cal. Dec. 13, 2016) (court exercised its discretion and concluded "that the equities weigh[ed] in favor of allowing the present action to proceed" after defense counsel indicated it would oppose plaintiff's motion to amend the complaint in the earlier filed action); *Fido's Fences, Inc. v. Radio Sys. Corp.*, 999 F. Supp. 2d 442, 453 (E.D.N.Y. 2014) ("A duplicative suit does not, however, necessarily require dismissal of the later-filed action; such situations 'do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion.'").

Accordingly, the court will exercise its discretion and **DISMISSES WITHOUT PREJUDICE**, Plaintiffs' Breach of Contract and Penalties for Failure to Timely Pay Wages Claim.[6]

///

///

---

[6] Although the court finds it equitable to provide Plaintiffs with an opportunity to seek leave to amend their complaint in *Ludwig I*, the court takes no position as to the merits of such a motion at this time. Plaintiffs are reminded that if they seek leave to amend at this juncture, they will have to satisfy the more stringent "good cause" standard required under Rule 16 as the deadline for amendment has long since passed. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 952 (9th Cir. 2006). Plaintiffs would *then* have to meet the standards under Rule 15 to determine whether the proposed amendment should be allowed. *Eckert Cold Storage v. Behl*, 943 F. Supp. 1230, 1232 n.3 (E.D. Cal. 1996). The decision on whether to grant a party's request for leave to amend is within the discretion of this court, *International Association of Machinists & Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1390 (9th Cir. 1985), but is "not to be granted automatically," *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).

## IV.      CONCLUSION

In sum, the court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendant's Motion to Dismiss as follows:

1. Defendant's Motion to Dismiss Plaintiffs' First Cause of Action for Retaliation in Violation of California Labor Code § 1102.5 is **DENIED**.

2. Defendant's Motion to Dismiss Plaintiffs' Third Cause of Action for Age Discrimination under the FEHA is **DENIED**.

3. Defendant's Motion to Dismiss Plaintiffs' Fifth Cause of Action for Breach of Contract and Penalties for Failure to Timely Pay Wages is **GRANTED WITHOUT PREJUDICE**.  Should Plaintiffs elect to file a motion to amend in *Ludwig 1,* they have up to and including ***August 3, 2022,*** to do so.

4. Plaintiffs' Motion to Seal is **DENIED.** The Clerk of Court shall file the unredacted version of Plaintiffs' Opposition on the public docket, currently lodged on the docket at Document Entry Number 36.

**IT IS SO ORDERED**.

Dated:  July 20, 2022

Hon. Jeffrey T. Miller
United States District Judge

21cv871 JM (JLB)